Number 182062 Scott Jordan Jr. v. Town of Waldoboro et al. Good morning, Your Honors. My name is Karen Wolfram and it's my honor to be before the Sistine Court on behalf of my client, Scott Jordan Jr. At this time, if I may respectfully request to reserve two minutes for rebuttal. Yes. Thank you, Your Honors. This case is before this Court pursuant to a grant of a summary judgment as to my client's claims of unlawful search and seizure, false arrest, malicious prosecution, pursuant to 1983, as well as analogous state law claims of false imprisonment and malicious prosecution. There's also a claim of punitive damages. The claims in this case stem from allegations made by my client's father, Scott Jordan Sr., that my client misused a power of attorney that the record establishes that he wanted, initiated, and was going to have his own lawyer draft up, and in fact did. Pursuant to his allegations to the Waldoboro Police Department, my client was arrested for class B theft. His home was searched and his property seized, and he was prosecuted thereafter, all without probable cause. His claims with regards to false arrest, false imprisonment, and malicious prosecution, as well as his main tort law claims, all have an essential element, which is probable cause. The Court, in analyzing the summary judgment motion in this case, made an error of law that is reversible error in this case. The Court made the decision that several numerous additional opposing statements of material fact asserted by my client were not outcome determinative, particularly facts that bore on the failure of Waldoboro Police Department to verify any of the allegations of Scott Jordan Sr., and bearing on the lack of credibility of Sr. and positively on the credibility of my client. Finding that they are not outcome determinative because an officer is not required to credit a suspect's innocent explanations as to suspicious facts. Material facts on summary judgment have to be analyzed under the substantive law of the underlying claim. In this case, the substantive law of probable cause requires that it be analyzed under the totality of the circumstances. That means that you have to take into all the facts and circumstances known to the police up until the time of arrest, as well as consider the trustworthiness of the information relied upon. Clearly, these facts that were not considered by the Court, or disregarded as not being material, needed to be considered to determine if there was probable cause, and an error found that there was, and no constitutional violation as to my client's claims of false arrest and unlawful search and seizure. The issue with the analysis of summary judgment also requires that the Court take all the facts in the light most favorable to my client and all inferences therefrom. If the Court had done so, it would have found that there was genuine issues of material fact in dispute that required that this matter go to jury, and not that there be a grant of summary judgment. It should be reversed. As to the unlawful search and seizure claims, they're based on an assertion that the arrest warrant offered by Officer Heseltine, and reviewed by the Chief of Police Lombardi, included false statements knowingly and intentionally included in there, as well as material misrepresentations of exculpatory, excuse me, material omissions of exculpatory facts that were also intentionally knowingly or in reckless disregard for the truth made. Example of that is the failure to attach the power of attorney to this search warrant affidavit, or even include any of the terms of the power of attorney. The power of attorney... Suppose, let's take a hypothetical. Suppose we find that a jury could find that the officer who obtained the search warrant knowingly and intentionally omitted highly material exculpatory facts. At that point, both parties, as I read the briefs, seem to presume that we would do a stage two of a Frank's analysis, as if this were a suppression hearing. Could you explain to me why that is so? Why, if we found in your favor that there was an intentional omission of material exculpatory facts, what then do we do next, under your view? Your Honor, in my view, that would mean that there's an actionable claim, a triable issue of a constitutional violation. If a reasonable jury considered the false statements that were made once excluded, and the omitted information included, that that vitiated probable cause on a corrected warrant, then that's a claim in which my client could prevail. Was there any evidence that the officer who completed the affidavit withheld in the chain of command those same facts from anyone else whose approval was required to seek the warrant? In other words, as I understand it, you have one officer fills out the affidavit, but I don't think the record suggests he just went on his own right to the magistrate to get a warrant. He consulted with others. That's absolutely correct, Your Honor. And others were higher ups, at least in one case. Yes. Is there any evidence that he withheld from those higher ups some of those exculpatory facts, such that had he disclosed those facts, a warrant might not have even been sought? Officer Heseltine was the affiant, and the evidence on the record is that he regularly reviewed the evidence in the case with the chief of the police, Lombardi. Lombardi did review the affidavit. I assume he knew about the power of attorney. He supposedly knew all the information that was going in the investigation, but if there was another officer, Your Honor, who was not the affiant, who had additional information that, to the extent it's a disputed issue on whether the affiant knew this additional information, he is still liable, Officer Fuller, which was the information that my client offered to give the firearms to Walthamborough Police Department. Pause a second here. You said you assume that the, is it the chief? Yes. Knew about the discrepancy between what is in the affidavit and what, and the provenance and substance of the POA. Absolutely. What's your basis for that assumption, and how does that help you? The, the chief of, this, this is, the chief's directly involved in the obtaining of the search warrant and in the investigation, so he has his own individual liability as well as the affiant, Officer Heseltine, but, um... Aren't you better off if Heseltine didn't tell the chief? I don't think that's, that may be that I'm better off, Your Honor, but the fact is, is that Officer Heseltine was the affiant, and he, he's the one who submitted it to the court. He's the one who had a copy of the power of attorney that was provided to Officer Fuller when he took over the investigation, and he did not provide those terms in it. And in the affidavit, he, that he submits, it cannot be reconciled that he also states that, if I can get there, that, that, he states in the end, at the end of the warrant affidavit that my client, as an agent under the power of attorney, does not have authority to use senior's property for his benefit. The fact is, is he knew that the terms of the power of attorney specifically allowed my client to convey property to himself and to use it for his own benefit. So, he was aware of the terms, Officer Lombardi was aware of the terms to the extent he was, the evidence is that Heseltine bounced everything off him throughout the investigation. Well, the fact is, it's a clear misrepresentation in the affidavit not to provide the power of attorney terms and then claim that he had no right to use any of the property for his own benefit. Let's assume that it's, that it is clear that he knew, the affidavit knew this information, I guess we could assume every defendant knew the information, and that every defendant knew that a misleading warrant was going to be, that warrant application was being made. Okay. So, assume all of that. As I, going back to a question Judge Carotta asked you earlier, the evidence could be clear in that regard, in other words, could be clear that he had all this information about relevant facts and that despite having all that information, he chose deliberately not to put them forward. Nonetheless, the warrant is then issued on the basis of the information that was given. One possibility is that the governmental action in withholding that information from the magistrate because it was information that it's clear they knew and that clearly could be relevant is in itself enough for you to win even in the face of a defense of qualified immunity. But another possibility is, and this is the one I'd like you to address, even if it was clear that they had this information and they withheld that information and that information could bear on the question and it would be good practice to give it, nonetheless, when we look at all the evidence together, the omitted evidence and the evidence in, what precedent do you have to suggest that it is clear that considering all that evidence together there would not be probable cause to go forward? I believe that, Your Honor, taking the totality of the circumstances as set forth in a corrected affidavit, that there would be a lack of probable cause. But you have to have it, don't you have to show that it would be clear that there was a lack of probable cause in the face of a defense of qualified immunity? No, respectfully, in a defense of qualified immunity, if there is a clearly established constitutional right, which there is, not to be subjected to a search based on a false and misleading warrant, and a jury could find that in fact there is no probable cause. I thought that you have to be, when the warrant application is false and misleading, and then the warrant issues, can the officer rely in good faith on that warrant if even what was left out might show probable cause? I do not believe that is the case in this circumstance, Your Honor. But then, does it have to be clear that it is not the case in order for you to win on qualified immunity? That is my question. Qualified immunity, as in Burke v. Town of Wapol, the courts did not allow immunity to the shield of immunity. In that case it was a non-appiant who withheld exculpatory evidence and only inculpatory evidence was included. In that case the court found he was not immune because it was false and misleading and he knew it was. And I think that is the same circumstance here. If it is false and misleading, it is intentionally, knowingly, or a reckless disregard in doing so. You cannot be immune for doing that under the law. What about the fact that the police determined that the truck that Senior had said was taken from him and was being put up for sale, they found it on Craigslist? What do you do with that fact? What were the police supposed to do with that fact? The evidence in this case, Your Honor, is that the criminal conduct that is alleged all occurred when the power of attorney was in effect. That was not... So you have a power of attorney, you also have a main state statute that says that the criminal conduct of the truck was not in effect. Do we assume that the police officers had no knowledge of that? Are they supposed to write a legal treatise to explain the differences between the two? May I continue, Your Honor? Of course. Thank you. It is not an expectation that the police write a treatise. The issue is here is that there is a legal binding document, a power of attorney, and it is not my client's position that a power of attorney is a license to steal. That is not the circumstance here. But what the terms did allow, which were all in effect at the time that the alleged criminal activity occurred... I understand what the terms allowed. I was making a reference to the state statute that is in place. So what were the police supposed to have included in the affidavit? You say the power of attorney. Wouldn't that have been misleading if they thought that there was a higher obligation under the law? There is independent duties outside the terms of the power of attorney under the main power of attorney act. However, the evidence that the police had that they also omitted was that he was acting within the reasonable expectations known of the principal, including there being a plan before and after the power of attorney was executed. So how does that apply to the truck? That applies to the truck, Your Honor, because the truck, the evidence that the police had and the totality of circumstance corroborated in a letter was that the transfer of the truck was mutually agreed upon by both parties, that the father wanted this to protect the asset. And then when they arrested my client pursuant to the search warrant, they in fact found an independent document dated June 12, 2014, while the power of attorney was in effect, that the father gifted the truck to my client and it was signed by him. This isn't solely based on the power of attorney. They had evidence that he was acting in relying on this plan to move in together to sell his property as he wanted at the yard sale, to fix up his home and use his time and expense and money to do that, which he did. And they had receipts and evidence of expenses to that effect. So you've reserved some time. Thank you, Your Honor. Good morning. May it please the Court, my name is Kasia Park and I, along with my colleague Ed Vegeman, represent the defendants. Contrary to the plaintiff's argument, the district court here correctly applied the Rule 56 summary judgment standard. It did not outright dismiss plaintiff's opposing or additional statements of fact. It in actuality meticulously went through the record and credited the plaintiff's qualifications in considering the facts and also accept many of those facts at face value. It explicitly acknowledges that's what it did in its opinion. Rather, the court determined correctly that these facts were not material to its probable cause analysis. Stay with that. It seemed that the magistrate judge seemed to think you didn't have to include the other side's version of the story, the defendant's version of the story, which I suppose in some cases may be true. But when you have an affidavit and it says that the plaintiff, Jordan, obtained a POA from his father, that paints a fundamentally different picture from what we know happened here, what we know Officer Hazeltine knew happened, which is that his father's lawyer drew up the POA. This wasn't a case of the son going to the hospital, the sick dad, and sticking something in front of him. To omit that and omit the fact that Officer Jordan had offered to turn the guns over to the police, it's hard to be admitted unless someone was trying to do an affidavit that made things look worse than they were. I can't think of any other reason to exclude those facts. Well, Your Honor, Officer Hazeltine was reporting to the court what Senior was describing to him. And Officer Hazeltine points out that there was a power of attorney and that Junior was claiming that he was acting pursuant to the power of attorney. But as recognized by the district court and this court, there is a statutory obligation upon an agent to act in accordance with the reasonable expectations of the principal. And let me take just one thing. The second paragraph of the affidavit says Scott Jordan Jr. presented Scott Jordan Sr. with paperwork requesting he appoint himself as his father's financial power of attorney. So the initial transaction is described like the scene from a soap opera where the son is trying to get everything from the father. And as I understand the jury could find that Officer Hazeltine knew that was just flatly wrong. That the power of attorney had been drawn up by the father's lawyer. Yes, Your Honor. A jury based on the district court's findings could find that. However, we have to still look at the totality of the circumstances. Okay. Isn't it the law that an officer cannot intentionally and knowingly omit a highly inculpatory, exculpatory fact and put in a false fact knowingly in a search warrant affidavit? I thought that was pretty clear. You can't do that. Yes, Your Honor. It's clear that you cannot intentionally include a deliberate misleading fact. However, here the heart of Senior's complaint is Officer Hazeltine is not necessarily attacking the validity of the power of attorney. The Senior's complaint is that Scott Jr. did not act in accordance with his reasonable expectations and his interests. And the court still has to look at the totality of the affidavit to see if there's probable cause. Fair enough. So let's expand it a little. It says two other things. It says that Scott Jordan allowed, allowed his father to order items on a menu that were not allowed per the restricted diet plan. But then it seeks an indictment because he didn't allow his father to hang onto his guns. And it simultaneously omits the fact that the son had offered to turn the guns over to the police. That seems, that seems like the type of drafting that would be a rather clever attempt to paint a picture that just was false here regarding the guns. Your Honor, if you note, Officer Hazeltine did include Scott Jr.'s reason for hanging onto the guns, claiming that his father was suicidal. So it did inform the court that Junior had a reason why he was holding onto the guns. And it omitted the fact that made that compellingly true, which is Junior didn't want the guns. He was willing to turn them over to the police. Why would the officer have omitted that fact? I can't speak specifically for Officer Hazeltine at this point, but based on the totality of the circumstances, Officer Hazeltine made clear to the court that Junior was hanging onto the guns because he was claiming Senior was suicidal. He also did not return the guns after repeated requests for Junior to return them to Senior made by Senior and also by Senior's attorney, Pease. I'm not understanding something about your argument, which is not because of what you were saying. I'm just not following a piece that I want you to help me clear up. You said earlier that it is clear that if you don't include, I don't know what the word you want to use, relevant information, material information, or you include false information, that that is clearly prohibited. An officer cannot do that. You also said that we have to look at whether in the totality of the circumstances, nonetheless, there would be probable cause. I'm trying to figure out how those two statements go together here. So the facts that Judge Catter lays out seem like facts that you would want to include. They're relevant. If I was a magistrate, I would have liked to have heard all that before I made my decision to grant the warrant. It might also be the case that having heard it all, I might nonetheless conclude, you know what, now that I've heard the whole story, okay, there was probable cause. But whether I would have liked to have known it before I made my decision, it's hard to think of a magistrate who wouldn't want to know that because you get a much fuller picture of what's going on. They're not incidental, trivial pieces of the story. They seem like the way this usually plays out, you try to make a showing, I want a Frank's hearing. It's enough just to get to the hearing. But I'm just trying to figure out how that plays out here because we're not in a suppression setting. And it looks like there's at least a very strong case for saying that the officer knew these facts and omitted these facts and that these facts are highly significant and relevant. Is that enough to then say they can bring the damages action? Because you then keep saying, well, we have to look at the totality of the circumstances whether there would have been probable cause. I'm not sure why I have to do that. So could you help me figure that out? Are you saying that what that really means is that although these facts look very relevant, they're just not to include them, but if they were included, you'd still find probable cause or is there no difference between those two positions? I think there's not significant difference between the two positions. I think the point is first, they have to be clearly exculpatory facts. And although some of these facts are relevant, they don't rise to the level of clearly exculpatory evidence. The other point is that if it is suppression setting, this criminal conviction says I'd like to suppress the evidence of the search warrant because I want to show that the officer knew all these facts and intentionally didn't include them. So I'd like a Frank's hearing. You'd say he's not entitled to a Frank's hearing? Correct. Does your argument depend on that? Not necessarily. Are you just saying it's not clear he'd be entitled to a Frank's hearing and since it's not clear, you win under qualified immunity? Right. Yes. In a convoluted way, I suppose, but yes, that's correct. Just going back briefly to the power of attorney, officer has sometimes search warrant affidavit clearly set forth that Junior was acting pursuant to the power of attorney and also there are the statutory obligations under the main uniform power of attorney act that Junior was still required to act in accordance with Senior's reasonable expectations which included, for instance, Senior has specifically directed Jordan to pay proceeds from the sale of the trailer for $2,000 to his tax bill and Junior admits that he did not do so. So that is just one example of him not acting in accordance with Senior's reasonable expectations. Even on that note, in Maine, as I understand it, there are two general types of power of attorney. One is your normal one and that triggers the standard that Chief Judge Howard mentioned, which is a fiduciary duty to operate in the interest. But under Maine law, I think you can also include a provision in a POA that actually allows self-dealing in the interest of the agent. And then that triggers only the expectations argument. Your guide left out the fact, indeed, that this was the latter type of POA that allows self-dealing by the agent. My understanding of the Maine statute is that the agent has to act in reasonable expectations of the principal and also has to act in accordance with the fiduciary duty. I believe the statute incorporates the fiduciary duty, the duty of loyalty. And again, Officer Heseltine did make the court aware that there was a power of attorney here. He just avoided describing which type it was. Well, Your Honor... And he had a copy of it, didn't he? He did have a copy of the power of attorney. But you could have just attached to the affidavit. He could have, Your Honor, although the main complaint here by Senior was that he wasn't acting in accordance with his reasonable expectations. And when we look at the totality of the circumstances, including the fact that Junior had advised Senior he was going to return his truck and then posted it on Craigslist for sale, that gave him probable cause to seek the search warrant affidavit. Normally in these clearly established type of questions, we're treated to a bunch of precedents that seem analogous, where you show something like, look, they said even there this seemingly exculpatory evidence wasn't material. And then you say our case sort of is like that case, therefore how could an officer know? You don't cite any cases like that, and neither does the other side. That's why I'm a little bit at sea. I don't really know what my... I have to make some judgment. How clear is it that this evidence is not material to the probable cause question? And what am I supposed to look at to figure that out? So I believe the plaintiff's attorney cited the Berkley town of Walpole case. So we distinguish that case here, because this is not an instance where we're dealing with DNA evidence that's clearly exculpatory. But what's a case that you have that suggests this would not be material? What's your best case to show that the evidence omitted here is not material? I guess I couldn't find, based on my research, a sufficiently analogous case to cite in this instance. I don't have one off the top of my head that I could refer to you, but we do distinguish it from the Berkley town of Walpole case, because this is not a type of instance where it's clearly exculpatory, and any reasonable officer would know that this type of information is clearly exculpatory. And what about the chief? Do you agree that the jury... Do you agree that it's clear that the chief knew the facts that Hazeltine knew that Hazeltine left out of the affidavit? In other words, did the chief know what Hazeltine knew regarding what seems to me to be a materially false affidavit? I believe the record reflects that he generally knew about the investigation, and as plaintiff's attorney stated, that Hazeltine bounced everything off of him. So he was aware of the power of attorney. And did he know the power of attorney had been drawn up by the father's lawyer? I don't think there's anything in the record to indicate that Chief Lombardi specifically knew that fact. Is there anything in the record to indicate whether he read the POA? No, there's nothing in the record about that, Your Honor. And then how about the guns? Did the chief know that Jordan had volunteered to turn the guns over to the police department? At the time of the drafting of the search warrant? Yes. No, Your Honor, there's nothing in the record about that. Unless there's any further questions, defendants rest on their brief. Thank you. Thank you, Your Honor. Just briefly, if I may, as to the materiality issue of the omitted evidence of the POA terms, yes, the court correctly points out that we don't have a case that specifically says that that would be material. However, this is a circumstance where a financial power of attorney is a legal binding document. If it doesn't have any credence in front of a court or for purposes of a probable cause analysis for whether somebody committed theft, then there wouldn't be any reason to have one. And the fact is that my client relied on authority that he lawfully had. I guess what I'm asking is, and I don't know if I'm thinking about this clearly or not, but imagine that the officer had done everything they should have done, in your view, and the affidavit included the whole story. Yes. If a magistrate then issued the warrant on the basis of that affidavit, would it be clear under our precedent that we'd have to reverse? Yes, Your Honor, because a court owes no deference to a warrant that's issued based on false and misleading statements. It would be clear, and the best case you'd have to show it would be... No, no. I'm not asking whether false and misleading. If the affiant had done everything he wanted and had included all of the facts that in fact were omitted in the application, so they got an application that told the whole story, if the magistrate judge then issued the warrant on the basis of that application, would it be clear that we would have to reverse on the ground that there was no probable cause? Forgive me. If the court had issued a warrant based on an affidavit that included all the omitted information as well as excluded the false statements? Yes. No, because if the court issued a warrant, well, I guess... I don't believe probable cause could be found if the omitted information was included. Does your argument depend on that? It depends on the fact that, yes. Because can it be material to have excluded that information if, including the information, you could still issue the warrant? That's what I'm trying to figure out. The information needs to be material that it would vitiate probable cause, and in this case, when you take all the omissions and false statements and exclude the false statements and include the omissions, I think the evidence is that it vitiates probable cause. So, yes, to have an actionable claim, I believe the false statements have to be material and actually have affected the probable cause analysis. Hopefully that answers the question. The circumstance here is also that... Is this your final point? Certainly, Your Honor. Okay. I just think you ought to say the fact is that the reliability of Senior was also something that was not reasonably done in this case. That was the only evidence Hazeltine admittedly used in drafting the warrant. And Senior, they knew. I'd already made a false complaint against my client for assault when he was upset about the public attorney struggling with coming to terms with his failing health. That he was accused of stealing my own client's property to Officer Fuller. That he had already told his sister that he was going to make his son his power of attorney, that he was going to have his lawyer draft it up, and this is what he really wanted. And that he had threatened to punish my client, which was cooperated in documents my client had provided. So not only do we have the lack of reasonless in relying on anything he had provided, but we also have the false statements. And that lack of reasonable reliance on his information also applies to the lack of probable cause to arrest and for malicious prosecution.  Thank you, Your Honors.